IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 4, 2025

## JOE G. MANLEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Fayette County**
**No. 22-CR-109      J. Weber McCraw, Judge**

_____

## No. W2024-01114-CCA-R3-PC
_____

The petitioner, Joe G. Manley, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and TOM GREENHOLTZ, JJ., joined.

Bo Burk, District Public Defender and Kari I. Weber, Assistant Public Defender, for the appellant, Joe G. Manley.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Mark Davidson, District Attorney General; and Falen Chandler, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

#### I.      Guilty Plea Hearing

Following an incident involving the petitioner's girlfriend and her four-year-old daughter, the petitioner was indicted with one count of aggravated criminal trespass (count one), one count of especially aggravated kidnapping (count two), one count of aggravated kidnapping (count three), one count of aggravated domestic assault (count four), and four

counts of coercion of a witness (counts five through eight). On November 9, 2022, the petitioner pleaded guilty to one count of aggravated assault as a lesser-included offense of aggravated domestic assault, for which he received a sentence of ten years at 35% to be served consecutively to his sentence in another Fayette County case, docket number 20-CR-157. The remaining counts were dismissed. The facts underlying the plea, as explained by the State, were as follows:

[O]n or about March 13, 2022, at approximately 1515 hours, Nicole Hogan met with Deputy Raymond Davis with the Fayette County Sheriff's Department along with Deputy Kevin Jones at the CJC regarding incidences that she had had with her boyfriend, [the petitioner]. Ms. Hogan stated that on March 11, 2022, she was on her way home [] and she had received many messages from [the petitioner] accusing her of cheating. Ms. Hogan stated that when she pulled into her driveway at approximately 2020 hours, [the petitioner] was there and angry. She stated that when she walked into the house the argument continued and the verbal argument became physical. She stated that she told [the petitioner] to leave her house if he's going to accuse her of cheating. Ms. Hogan further stated that [the petitioner] was in her face yelling at her and he refused to leave. She advised during the physical altercation she did punch [the petitioner] in the mouth to defend herself but she advised that [the petitioner] grabbed a flathead screwdriver and held the sharp end to her neck while she had her juvenile daughter, initials "BH," date of birth July 4, 2017, in her arms. She advised while [the petitioner] held the screwdriver to her throat he stated, "I'm going to kill you and myself" and, quote, "Look at me b***h." Ms. Hogan advised she thought [the petitioner] was going to kill her and she was in fear of her and her daughter's life. She advised that her juvenile daughter was yelling, "Please don't die, Mom." She advised that [the petitioner] then stated he was not going to kill her while still holding the screwdriver to her throat. The officers did speak further with the juvenile who advised that [the petitioner] did hold a screwdriver to her mother's being Nicole Hogan's throat after [the petitioner] broke and crawled through – and that he also had broke in and crawled through the window on a different date.

This did occur in Fayette County, Tennessee.

During the plea colloquy, the petitioner informed the trial court that he understood his rights. He further understood that, by pleading guilty to the charges, the petitioner would be waiving his right to a trial by jury, to confront the witnesses against him, and to appeal. The petitioner affirmed he was not being forced to plead guilty and was pleading

guilty freely and voluntarily. The trial court accepted the plea agreement and found the petitioner guilty of aggravated assault.

## II.    Post-Conviction Hearing

The petitioner filed a pro se petition for post-conviction relief, arguing trial counsel was ineffective due to his inexperience and for failing to discuss the petitioner's mental health evaluation results and failing to file motions or research the petitioner's case. The petitioner also argued trial counsel coerced the petitioner into accepting his plea agreement and then falsified the plea agreement. Following the appointment of counsel, an evidentiary hearing was held on June 27, 2024, during which trial counsel and the petitioner testified.

Trial counsel testified that he was appointed to represent the petitioner on several cases in general sessions, including a probation violation as well as the charges from the instant case. Trial counsel met with the petitioner "several times through jail meetings or through meetings with his family members, phone calls." Regarding pretrial preparation, trial counsel testified that he reviewed the evidence and discovery in the case, spoke with the State, and interviewed Ms. Hogan. Trial counsel also requested a mental health evaluation of the petitioner, reviewed the results with the petitioner, and provided him a copy of the results.

Trial counsel testified that he began practicing law in November 2021 and had not yet completed a criminal trial when the petitioner's case was resolved. Trial counsel was candid with the petitioner about his level of experience, and the petitioner "seemed very satisfied throughout [trial counsel's] entire representation of him." Trial counsel denied telling the petitioner that he did not believe he could proceed with a trial but advised the petitioner that "going to trial would have been a poor decision."

According to trial counsel, the petitioner originally wanted to take the case to trial. However, after trial counsel spoke with Ms. Hogan and determined that her testimony would be consistent with her statement to police, the petitioner agreed to accept a plea agreement, which trial counsel believed was the best course of action. Trial counsel and the State had extended negotiations regarding the plea, and the State eventually agreed to let the petitioner plead guilty to one count of aggravated assault with a sentence of ten years at 35% to be served consecutively to a violation of probation that trial counsel was also handling for the petitioner. Trial counsel stated that he communicated the offer to the petitioner and also showed him the written agreement from the State which listed the terms of the offer. Trial counsel agreed the plea form that the petitioner initialed at the plea hearing did not reflect whether the aggravated assault sentence would be consecutive or concurrent to the violation of probation sentence and that the trial court did not address the

matter at the plea hearing. However, trial counsel was adamant the petitioner was aware of the terms of the offer. Additionally, following the plea hearing, trial counsel reviewed the judgment form with the petitioner. The first page of the judgment form stated that the petitioner's aggravated assault sentence would run consecutively to his violation of probation sentence, and the second page contained the petitioner's signature. On cross-examination, trial counsel agreed that every offer extended by the State required the petitioner's sentences to be served consecutively and that he discussed the details of every offer with the petitioner.

Trial counsel denied coercing the petitioner into pleading guilty, stating that he did not tell the petitioner that Ms. Hogan would be prosecuted and her child taken away if she changed her testimony. Although trial counsel did subpoena DCS for any records involving Ms. Hogan, he could not recall whether he ever received them. Trial counsel stated that he spoke to Ms. Hogan several times, and her story never wavered from her statement to police. This is what ultimately persuaded the petitioner to accept the plea offer. During the plea hearing, the trial court stopped the proceeding because the petitioner was "giving some strange answers." Trial counsel took the petitioner aside and asked him if he was certain that he wanted to proceed with the guilty plea. Trial counsel told the petitioner they could "absolutely [] go to trial." Trial counsel denied receiving a notarized letter from Ms. Hogan declaring the petitioner's innocence.

The petitioner testified trial counsel did not discuss the results of his mental health evaluation with him or provide him with a copy of the results. According to the petitioner, trial counsel told him that, if he accepted the plea offer, "the evaluation wouldn't matter." The petitioner told trial counsel that he wanted to pursue a defense based on mental issues. However, trial counsel refused to pursue it.

According to the petitioner, trial counsel explained that he had never represented a client at trial before and did not "know if [he could] win anything." While encouraging the petitioner to accept the plea offer, trial counsel told the petitioner that he could not "help [him] in a trial."

Regarding the plea offer, the petitioner testified that he provided trial counsel with a seven-page letter in which Ms. Hogan stated the petitioner was innocent. However, trial counsel told the petitioner "they're going to get [Ms. Hogan] if she recants her story and they're going to arrest her for filing a false felony report." The petitioner did not want to plead guilty but believed it was the only way to keep Ms. Hogan out of jail. The petitioner acknowledged that he testified at the plea hearing that he had not been coerced or threatened; however, he stated that "this town is corrupt" and accused the trial court of "profiling" him.

The petitioner testified trial counsel told him the plea offer was for ten years at 35% to be served concurrent with Sutheg violation of probation sentence. Because the petitioner had several years of jail credit, he believed this meant he would be able to go home following the hearing. Although he acknowledged telling the trial court that he knew he was "going to prison [and was] not going home," the petitioner clarified that he meant he was going to serve a few months at the county jail instead of returning to prison. The petitioner testified that when trial counsel showed him the judgment form after the plea hearing, it stated that his sentences would be concurrent. He stated that he would not have signed the judgment form if it said his sentences would be consecutive. The petitioner also testified that the plea form he initialed during the plea hearing was different from the one entered into evidence at the evidentiary hearing. The petitioner testified that the form he initialed clearly indicated the sentences would be concurrent. On cross-examination, the petitioner testified that either trial counsel or the prosecutor "switched the pages" of the judgment and the plea forms after he signed them.

After its review of the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

### *Analysis*

On appeal, the petitioner argues trial counsel was ineffective due to his inexperience and for failing to discuss the petitioner's mental evaluation, failing to file motions or research his case, and failing to advise the petitioner regarding whether his sentences would be concurrent or consecutive. He also argues his plea was not voluntary. The State contends the post-conviction court properly denied the petition. Following our review, we agree with the State.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A guilty plea must be knowingly, voluntarily, and intelligently entered in order to be valid. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). The court must determine whether the guilty plea evidences a voluntary and informed decision to pursue a guilty plea in light of the alternative options available to the defendant. *Id.* In the context of a post-conviction challenge to a guilty plea, both prongs of the *Strickland* test must be met. *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013). Thus, to successfully challenge his

guilty plea, the petitioner must show counsel's performance was deficient, and he "must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea." *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Garcia*, 425 S.W.3d at 257 (Tenn. 2013).

## I.      Failure to Discuss Mental Health Evaluation[1]

The petitioner argues trial counsel was ineffective for failing to discuss the results of the petitioner's mental health evaluation. The State contends the petitioner failed to prove that trial counsel was deficient or that the petitioner was prejudiced.

At the evidentiary hearing, trial counsel testified that he requested a mental health evaluation for the petitioner, reviewed the results with him, and provided him with a copy of the results. The petitioner testified that trial counsel did not discuss the results of the mental health evaluation or provide him with a copy of the results. Trial counsel told the petitioner that, once the petitioner accepted the plea offer, "the evaluation wouldn't matter." The post-conviction court accredited the testimony of trial counsel, and nothing in the record preponderates against its findings. *See Tidwell*, 922 S.W.2d at 500. Additionally, the petitioner has failed to prove by clear and convincing evidence his factual claim that he did not receive the results of the mental health evaluation. The petitioner is not entitled to relief on this issue.

## II.     Failure to File Motions and Research Case

The petitioner argues trial counsel was ineffective for failing to file motions or properly research his case. The State contends the post-conviction court properly found trial counsel was not ineffective for failing to file motions or research the petitioner's case.

At the evidentiary hearing, neither trial counsel nor the petitioner was asked about trial counsel's failure to file motions or research the petitioner's case. However, trial counsel testified that he prepared for trial by reviewing discovery, speaking with the prosecutor, and interviewing the victim, Ms. Hogan. The post-conviction court accredited the testimony of trial counsel, and nothing in the record preponderates against its findings. *See Tidwell*, 922 S.W.2d at 500. Furthermore, the petitioner failed to identify the type of research trial counsel should have conducted or the type of motions trial counsel should have filed. *Olive v. State*, No. M2023-00719-CCA-R3-PC, 2024 WL 2797015, at *8 (Tenn. Crim. App. May 31, 2024), *perm. app. denied* (Tenn. Oct. 24, 2024) (the petitioner

---

[1] For the sake of clarity, we have reordered and renumbered the issues from the order they appeared in the petitioner's brief.

is obligated to show what a reasonable investigation would have revealed).  Accordingly, the petitioner has not established that trial counsel's performance was deficient, and therefore, he is not entitled to relief on this issue.  *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (in the context of a claim that trial counsel "failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing").

### III.     Trial Counsel's Lack of Experience

The petitioner argues trial counsel was ineffective because he was inexperienced at trial.  The State contends the petitioner has waived this issue for failing to provide any authority or reasoning.

We note the defendant's argument regarding this issue consists of one conclusory statement.  He states generally that trial counsel's "representation was ineffective in that he was inexperienced at trial."  However, this statement is supported by neither argument nor authority.  "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."  Tenn. Ct. Crim. App. R. 10(b).  Failure to comply with this basic rule will ordinarily constitute a waiver of the issue.  *Id.*  Because the petitioner failed to support the issue with argument or citations to authority, the issue is waived.

### IV.     Failure to Advise the Petitioner Regarding Consecutive Sentencing

The petitioner argues trial counsel was ineffective for failing to inform him that his aggravated assault sentence would be served consecutively to his violation of probation sentence.  The State contends the post-conviction court properly found trial counsel was not ineffective for failing to advise the petitioner regarding consecutive sentencing.

At the evidentiary hearing, trial counsel testified he informed the petitioner that the State's offer included consecutive sentencing and gave him a copy of the plea agreement stating the terms of the offer.  Trial counsel was emphatic that the petitioner understood the aggravated assault sentence would run consecutive to the violation of probation sentence despite the fact that the sentence alignment was not listed on the plea form initialed by the petitioner, and the trial court did not specifically state that the sentences would be served consecutively during the guilty plea hearing.  Following the plea hearing, trial counsel went over the two-page judgment form with the petitioner which stated that the aggravated assault sentence would run consecutive to the violation of probation sentence, and the petitioner signed the form.  The petitioner testified that trial counsel never told him the sentences would be consecutive, and he would not have accepted the plea offer if he had known.  He insisted trial counsel did not show him a plea agreement stating the

sentences would be consecutive and stated that either trial counsel or the prosecutor "switched the pages" of the judgment form after he signed it. However, the petitioner also agreed that he testified at the guilty plea hearing that he knew he was not going home and was going to prison. The petitioner testified that when he said this it was his understanding that he would need to serve time in the county jail following the plea and not that he would serve time in prison. As discussed above, the post-conviction court accredited the testimony of trial counsel, and nothing in the record preponderates against its findings. *See Tidwell*, 922 S.W.2d at 500. The petitioner is not entitled to relief on this issue.

## V.      Guilty Plea

The petitioner argues his guilty plea was involuntarily entered. Specifically, the petitioner argues that trial counsel coerced the petitioner into accepting the plea offer by telling the petitioner that Ms. Hogan would be arrested and lose her child if she changed her testimony. The State contends the post-conviction court properly found the petitioner failed to prove his guilty plea was involuntary.

At the evidentiary hearing, the petitioner testified that he provided trial counsel with a notarized letter from Ms. Hogan in which she recanted her statement to police and proclaimed the petitioner's innocence. However, trial counsel insisted the petitioner accept an offer from the State, threatening that "they're going to get [Ms. Hogan] if she recants her story and they're going to arrest her for filing a false felony report." Because the petitioner wanted to keep Ms. Hogan out of jail, he chose to accept the offer despite his innocence. Trial counsel denied coercing the petitioner into accepting the plea offer and testified that he did not tell the petitioner that Ms. Hogan would be prosecuted if she changed her testimony. Trial counsel stated that he spoke with Ms. Hogan several times, and her version of events never wavered from the statement she gave to police. During the plea hearing, trial counsel asked the petitioner if he was certain he wanted to plead guilty and told him they could "absolutely [] go to trial."

In denying relief, the post-conviction court found the petitioner "understood the significance and consequences of the particular decision to plea[d] guilty and the decision was not coerced." Our review of the guilty plea transcript mirrors the findings of the post-conviction court. The record shows the trial court thoroughly explained the nature and consequences of the petitioner's guilty plea. At the time the petitioner entered his guilty plea, he understood he would serve an effective ten-year sentence for aggravated assault which would run consecutive to a prior violation of probation sentence. Throughout the hearing, the petitioner affirmed that he understood his rights and wished to proceed with the guilty plea. The petitioner has failed to offer any evidence that preponderates against the post-conviction court's characterization of the knowing and voluntary nature of the petitioner's guilty plea. *See Tidwell*, 922 S.W.2d at 500. Accordingly, the record supports

the post-conviction court's finding that the petitioner was not coerced into entering the plea.  The petitioner is not entitled to relief on this issue.

### *Conclusion*

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's judgment denying the petitioner post-conviction relief.

s/ J. Ross Dyer_____
J. ROSS DYER, JUDGE